UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| BOBBY WHITAKER<br>244 Meadowview Drive, Apt. 10<br>Frankfort, Kentucky 40601<br><br>JOHN DOES 1-99<br><br>        Plaintiff<br><br>v.<br><br>POWERS ENTERPRISES, LLC<br>d/b/a Crown Towing<br><br>SERVE:  Weafers Tax Service<br>            1910 Garden Springs Drive<br>            Suite 106<br>            Lexington, Kentucky 40504<br><br>DAVID POWERS<br>218 Colonial Drive<br>Versailles, Kentucky 40383<br><br>and<br><br>ASHLEY YOST<br>218 Colonial Drive<br>Versailles, Kentucky 40383<br><br>        Defendants | Case No.:_____ |

## **COMPLAINT**

Come the Plaintiffs, Bobby Whitaker, ("Whitaker") and John Does 1-99, by counsel, and for his Complaint against Defendants Powers Enterprises, LLC, d/b/a Crown Towing ("Crown") David Powers ("Powers") and Ashley Yost ("Yost"), submits the following:

**INTRODUCTION**

This is an action brought pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §201, *et seq.* ("FLSA"), and the Kentucky Wage and Hour Act, K.R.S. Chapter 337, *et seq.*, seeking payment of back wages, including unpaid overtime wages, in violation of federal and state law.

**PARTIES**

1. At all times relevant herein, Whitaker is a resident of Frankfort, Franklin County, Kentucky, and performed work for Crown as a transporter of vehicles on behalf of Crown's clients.

2. At all times relevant herein, John Does 1-99 performed work for Crown as a transporter or repossession specialist.

3. At all times relevant herein, Crown is a Kentucky limited liability company, with a principal place of business located at 218 Colonial Drive, Versailles, Kentucky, authorized to do business, and doing business in the Commonwealth of Kentucky.

4. At all times relevant herein, Powers is a member of Crown, working in Versailles, Kentucky, and considered an employer as that term is defined under the FLSA and the Kentucky Wage and Hour Act. Powers directs the operation of Crown's business and is directly involved in its payroll and employee classification decisions.

5. At all times relevant herein, Yost is a member of Crown, working in Versailles, Kentucky, and considered an employer as that term is defined under the FLSA and Kentucky Wage and Hour Act. Yost directs the operation of Crown's business and is directly involved in its payroll and employee classification decisions.

6. At all times relevant herein, Defendants employ individuals engaged in commerce or the production of goods for commerce and/or handling, selling, or otherwise working on goods

or materials that have been moved in or produced in commerce by any person as required by 29 U.S.C. §§206-07.

7. Crown's annual gross volume of sales made or business done exceeds $500,000.

## JURISDICTION AND VENUE

8. Jurisdiction over the FLSA claim is proper under 29 U.S.C. §216(b) and 28 U.S.C. §1331.

9. Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. §1367, which provides for supplemental jurisdiction over state law claims so related to federal law claims that one case or controversy exists for Article III Purposes.

10. Venue in this Court is proper pursuant to 28 U.S.C. §1391 because a substantial portion of the events giving rise to the claims took place in this district, and Crown maintains its principle place of business in Versailles, Kentucky.

## FACTS

11. Crown is a full-service repossession and towing company providing light to medium and long distance towing. It operates a fleet of flatbeds, rollbacks and trucks with wheel lifts and dollies to address its customers' needs in recovery and transport of assets and vehicles.

12. Crown further defines the services that are integral to its business to include roadside assistances, involuntary repossessions, voluntary repossessions, skip tracing, secure storage, equipment hauling, towing, transports, accident recovery, impounding, field visits, lockouts, jumpstarts, flatbeds, rollbacks, wheel-lifts and recovery database network.

13. Crown provides services throughout the Commonwealth as well as in neighboring states.

14. Crown owns, operates and insures all of its vehicles. Each vehicle bears the Crown logo, Department of Transportation ("DOT") license information, and Crown's contact information.

15. As a transportation company, Crown is obligated to adhere to all state and federal transportation laws and regulations regarding the safe operation of vehicles, including but not limited to the number of hours a driver is restricted from working on a daily and/or weekly basis.

16. Upon information and belief, Crown employs a dispatcher, administrative assistances and a payroll clerk who assist Whitaker and John Does 1-99 in their work.

17. Whitaker began working for Crown in May, 2011, as a transporter, whose primary duties included picking up and transporting vehicles from one site to another on behalf of Crown. At all times, Whitaker's job duties included: performing a DOT-required pre-check of Crown's vehicle prior to the start of the workday, obtain and review bills of lading assigned to him by Crown to determine where to pick up and deliver vehicles on behalf of Crown's clients, pick up and deliver the vehicles on behalf of Crown, wash Crown's vehicle after use, attend mandatory safety and office meetings, and be available to perform work on-call at least one weekend a month.

18. Upon information and belief, John Does 1-99 had similar duties as Whitaker.

19. Whitaker's and John Does' job duties were integral to the operation of Crown's business.

20. Whitaker and John Does 1-99 were expected to work full time hours and dedicate their full efforts to work for Crown, Monday through Friday, from 7:00 a.m., until the jobs were complete. Typically, their day ended between 5:00 p.m. and 6:00 p.m., working an average of 50-60 hours per week. As a result, Whitaker and John Does 1-99 were unable to work for any other entity.

21. Whitaker and John Does 1-99 were not paid on a salary basis. Instead, they were to be paid a 30% commission on all bills of lading and/or invoices related to the vehicles they picked up and delivered. Neither Whitaker nor John Does 1-99 were paid overtime wages for hours worked over forty in a workweek. Whitaker and John Does 1-99 were paid as independent contractors.

22. Each pick-up and delivery completed by Whitaker and John Does 1-99 is documented by the bill of lading, documentation required to be maintained by the DOT and/or the Kentucky Transportation Cabinet, and the GPS tracking system installed on the Crown vehicles used by Plaintiffs. These documents will show the hours Plaintiffs worked picking up and delivering vehicles.

23. Whitaker and John Does 1-99 were economically dependent upon Crown.

24. Upon information and belief, at times when the dispatcher was out of the office, a John Doe would perform the duties of the dispatcher. Crown would pay John Doe a one-time cash payment for the performance of these job duties instead of an hourly wage, and failed to deduct taxes or issue an IRS form W2 for the work performed as a dispatcher. In addition, Crown failed to pay any overtime wages earned by John Doe for such work.

25. Crown provided Whitaker and John Does 1-99 with a company vehicle bearing Crown's logo, DOT license information, Crown's contact information, as well as insurance for the vehicle, and a fuel card to cover the gas expenses incurred by them.

26. Crown instructed Whitaker and John Does 1-99 in the method, manner and means of their work in the following ways: Crown dictated their job assignments and schedules; Crown required them to arrive for work by 7:00 a.m.; Crown dictated their travel routes; Crown required them to use a company-owned vehicle to perform their job duties; Crown required them to be

available for on-call work at least one weekend every month; Crown required them to wash company-owned vehicles after use, without pay; Crown required them to install an application on their phone related to pick up and delivery of vehicles; Crown required them to attend safety and office meetings, without pay; Crown required them to wear company-issued hoodies or t-shirts bearing the Crown logo; Crown mandated that they carry with them Crown business cards; Crown required them to follow company rules and procedures or be subject to discipline; Crown required advance notice of their use of vacation time; and Crown assigned each of them a supervisor.

27. Crown conducts all billing and invoicing for the work performed by Whitaker and John Does 1-99.

28. Whitaker and John Does 1-99 have no control over the prices to charge or the scheduling of the pick-ups and deliveries. All negotiations over the cost of work are done directly between Crown and its clients.

29. On several occasions, Crown would issue verbal warnings or suspensions of Whitaker and/or John Does 1-99 for violations of company rules.

30. Despite controlling the method, manner and means of the work, Crown, Powers and Yost paid Whitaker and, upon information and belief, John Does 1-99, as independent contractors, paying each of them on a commission basis of 30% of the bill of lading and/or invoice from the client.

31. Crown, Powers and Yost improperly classified Whitaker and John Does 1-99 as independent contractors, and have failed to properly pay wages, including overtime wages, and taxes for Plaintiffs' work.

32. The work performed by Whitaker and John Does 1-99 does not qualify for a white collar exemption under the FLSA and/or the Kentucky Wage and Hour Act.

33. Neither Crown, Powers nor Yost had a reasonable basis to believe that Whitaker and/or John Does 1-99 were exempt from the requirements of the FLSA and/or the Kentucky Wage and Hour Act, or that they were properly classified as independent contractors. Rather, Defendants either knew or acted with reckless disregard of clearly applicable and established FLSA and Kentucky Wage and Hour Act provisions in misclassifying Plaintiffs as independent contractors.

34. As a result of Crown, Powers and Yost's misclassification of Whitaker and John Does -1-99, they have been assessed fines and penalties associated with back taxes owed by the Kentucky Revenue Cabinet and/or the Internal Revenue Service.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## AND KENTUCKY WAGE AND HOUR ACT

35. Plaintiffs repeat, reallege and incorporate by reference herein paragraphs 1-34 of this Complaint.

36. The FLSA requires that all employees be compensated for all hours worked in excess of 40 hours per week at a rate of not less than one and a half times their regular rate of pay.

37. The Kentucky Wage and Hour Act, KRS Chapter 337, requires that all employees be compensated for all hours worked in excess of 40 per week at a rate of not less than one and a half times their regular rate of pay.

38. By virtue of the control exercised by Crown, Powers and/or Yost over Plaintiffs' work, and other factors, Crown, Powers and/or Yost misclassified Plaintiffs as independent contractors. Plaintiffs should have been classified as employees as defined under the FLSA and Kentucky's Wage and Hour Act.

39. Crown, Powers and/or Yost meet the definition of employer as defined under the FLSA and/or Kentucky Wage and Hour Act.

40. Crown, Powers and/or Yost did not pay Plaintiffs on a salary basis, and therefore Plaintiffs were not exempt from overtime benefits under the FLSA and/or Kentucky's Wage and Hour Act.

41. Plaintiffs regularly and routinely worked more than 40 hours per week.

42. Crown, Powers and/or Yost did not pay Plaintiffs overtime wages.

43. Crown, Powers and/or Yost willfully misclassified Plaintiffs as independent contractors and failed to pay overtime wages in violation of the law. Crown, Powers and/or Yost did not have a good faith basis to avoid the proper classification and payment of overtime wages.

44. As a direct result of Crown, Powers and/or Yost's misclassification of Plaintiffs and failure to pay proper wages, Crown, Powers and/or Yost are liable to Plaintiffs for overtime wages owed, an equal sum in liquidated damages, and attorneys' fees and costs incurred by Plaintiffs in bringing this action, all in excess of the jurisdictional minimum of this Court.

## COUNT II
## ACCOUNTING

45. Plaintiffs repeat, reallege and incorporate by reference herein paragraphs 1-44 of this Complaint.

46. Crown, Powers and/or Yost retain all the documentation necessary to fully and accurately account for monies that should have been paid to Plaintiffs.

47. Crown, Powers and/or Yost have not properly paid Plaintiffs monies owed for work performed by them on behalf of Crown clients, including overtime wages.

48. Plaintiffs are entitled to an accounting of all monies paid to Crown, Powers and/or Yost for services rendered by Plaintiffs.

## COUNT III
## CONSTRUCTIVE TRUST

49. Plaintiff repeats, realleges and incorporates by reference herein paragraphs 1-48 of this Complaint.

50. Plaintiffs relied upon Crown, Powers and/or Yost to collect and accurately account for monies paid by Crown's clients in order to receive the compensation agreed to by each of them.

51. Crown, Powers and/or Yost collected and retained monies from clients for services performed by Plaintiffs.

52. Crown, Powers and/or Yost were obligated to accurately and timely pay Plaintiffs.

53. Crown, Powers and/or Yost's collection and retention of funds created a constructive trust and a fiduciary duty between Crown, Powers and/or Yost and Plaintiffs.

54. Crown, Powers and/or Yost owed Plaintiffs the highest degree of care in collecting and disbursing the monies entrusted to them.

55. Crown, Powers and/or Yost's failure to accurately and timely pay Plaintiffs from the monies entrusted to Crown, Powers and/or Yost for distribution amounts to a breach of the constructive trust and fiduciary duty.

56. Crown, Powers and/or Yost's conduct was willful, fraudulent, oppressive and/or grossly negligent.

57. As a direct and proximate result of Crown, Powers and/or Yost's breach of constructive trust and fiduciary duty, Plaintiffs have been damaged in an amount that exceeds the jurisdictional minimum of this Court.

58. As a direct and proximate result of Crown, Powers and/or Yost's willful, fraudulent, oppressive and/or grossly negligent conduct, Plaintiffs are entitled to punitive damages from Crown, Powers and/or Yost.

## COUNT IV
## CONVERSION

59. Plaintiffs repeat, reallege and incorporate by reference herein paragraphs 1-58 of this Complaint.

60. Plaintiffs had the right to a portion of the monies paid to Crown, Powers and/or Yost and as a result of the services provided by Plaintiffs.

61. Crown, Powers and/or Yost's retention of the Plaintiffs' compensation is inconsistent with Plaintiffs' rights.

62. As a direct and proximate result of Crown, Powers and/or Yost's conversion of Plaintiffs' compensation, Plaintiffs have been damaged in an amount that exceeds the jurisdictional minimum of this Court.

## COUNT IV
## BREACH OF CONTRACT

63. Plaintiffs repeat, reallege and incorporate by reference herein paragraphs 1-62 of this Complaint.

64. Crown, Powers and/or Yost and Plaintiffs entered into an Agreement for compensation related to the provision of services.

65. Over the course of each Plaintiffs' employment, Crown, Powers and/or Yost has breached the Agreement by failing to pay Plaintiffs the proper amount pursuant to the terms of the Agreement.

66. Plaintiffs have made proper demand for payment.

67. Crown, Powers and/or Yost has failed or refused to pay Plaintiffs the full benefit of their bargain under the Agreement.

68. Crown, Powers and/or Yost's actions constitute a breach of the Agreement, entitling Plaintiffs to damages in excess of the jurisdictional minimum of this Court.

## COUNT V
## UNJUST ENRICHMENT

69. Plaintiffs repeat, reallege and incorporate by reference herein paragraphs 1-68 of this Complaint.

70. By providing services to Crown, Powers and/or Yost's clients, Plaintiffs have conferred a benefit upon Crown, Powers and/or Yost.

71. Crown, Powers and/or Yost have collected payments related to services provided by Plaintiffs without paying for the reasonable value of said services.

72. At all times, as owner of Crown, Powers and/or Yost have benefited personally from the benefits conferred on them by Plaintiffs.

73. Crown, Powers and/or Yost's retention of the monies without payment to Plaintiffs would be unjust.

74. Crown, Powers and/or Yost's actions have caused Plaintiffs harm in an amount that exceeds the jurisdictional minimum of this Court.

## COUNT VI
## THEFT BY FAILURE TO MAKE REQUIRED DISPOSITION

75. Plaintiffs repeat, reallege and incorporate by reference herein paragraphs 1-74 of this Complaint.

76. At all relevant times herein, Crown, Powers and/or Yost received payments from clients and third party payors in relation to services performed by Plaintiffs.

77. Crown, Powers and/or Yost had a legal obligation to remit portions of these payments to Plaintiffs in a timely manner.

78. Crown, Powers and/or Yost failed to remit payments to Plaintiffs when they were due and owing, and instead has dealt with these monies as its own.

79. Crown, Powers and/or Yost's conduct constitutes a violation of KRS 514.070.

80. Pursuant to KRS 446.070, Plaintiffs have a private right of action to sue for injuries arising out of Crown, Powers and/or Yost's and 's statutory violations.

81. Plaintiffs damages herein are in excess of the jurisdictional minimums of this Court.

WHEREFORE, Plaintiffs Bobby Whitaker and John Does 1-99, by counsel, hereby respectfully request as follows:

A. For judgment in their favor, including compensatory and punitive damages on their claims;

B. For their costs and attorneys' fees where allowable by law;

C. For a trial by jury on all issues so triable;

D. For any and all other relief to which they may be entitled.

Respectfully submitted,

MCBRAYER PLLC
500 W. Jefferson Street, Suite 2400
Louisville, KY  40202
(502) 327-5400
ceffinger@mcbrayerfirm.com


*/s/ Cynthia L. Effinger*
CYNTHIA L. EFFINGER
Attorney for Plaintiff