UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| BOBBY WHITAKER, *et al.*, | CIVIL ACTION NO. 5:20-66-KKC |
|     Plaintiffs, | |
| V. | OPINION AND ORDER |
| POWERS ENTERPRISES, LLC d/b/a CROWN TOWING, *et al.*, | |
|     Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendants Powers Enterprises, LLC d/b/a Crown Towing ("Crown"), David Powers, and Ashley Yost's motion for summary judgment. (DE 27.) Plaintiff Bobby Whitaker[1] having filed a response and cross-motion for summary judgment (DE 30) and Defendants having filed a reply and motion to strike Plaintiff's cross-motion (DE 31), the matter is now ripe for the Court's review. For the reasons set forth herein, Defendants' motion (DE 27) is GRANTED.

**I. Background**

Crown is a limited liability company co-owned by Powers and Yost that tows, transports, and repossesses vehicles in Kentucky and in neighboring states. (DE 27-6 at 3; DE 16 at 3.) Whitaker is a resident of Kentucky who performed work for Crown as a transporter of vehicles on behalf of Crown's clients. (DE 16 at 1.)

---

[1] The Complaint also lists "John Does 1-99" as plaintiffs. When asked about those plaintiffs, Whitaker stated: "I don't understand what that is." (DE 27-2 at 34.) Whitaker's Response to Defendants' motion is titled "Plaintiffs' Response . . ." but the introduction to the Response says, "Comes the Plaintiff, Bobby Whitaker . . ." (DE 30 at 1) and the conclusion says, "For the foregoing reasons, Whitaker respectfully requests this Court deny Crown's Motion for Summary Judgment." (*Id.* at 16.)  The filing was submitted by "Counsel for Plaintiff, Bobby Whitaker[.]" (*Id.*) Thus, the Court will consider Plaintiffs "John Does 1-99"—whoever they may be—not to have responded to Defendants' motion.

1

Whitaker worked for Crown as a transporter from 2011 to 2019. (DE 27-2 at 12.) As part of his duties, Whitaker exclusively drove trucks weighing more than 10,000 pounds and regularly drove across state lines. (DE 27-4.) For his work, Whitaker agreed to be and was paid a 30 percent commission for the transportation runs he completed. (DE 27-2 at 8–10.) This was a verbal agreement. (DE 27-7 at 6.) By his own admission, Whitaker agreed to this pay structure and the fact that he would not receive additional benefits, such as a 401(k) or health insurance. (DE 27-2 at 9–10.) Whitaker was also aware that his work included additional requirements such as ensuring the truck was clean and completing a pre-check required by the Department of Transportation. (*Id.* at 19–20, 43.) Ultimately, Whitaker stopped working for Crown because "they wouldn't give [him] runs like they used to[,]" they "played a lot of favoritism[,]" he was angry about the way he was treated, and "over pay." (*Id.* at 14–15.)

Whitaker left Crown around October 2019 (*Id.* at 12) and filed a complaint in this Court in February 2020. (DE 1.) Whitaker asserts claims for the following: (1) violation of the Fair Labor Standards Act and Kentucky Wage and Hour Act; (2) accounting; (3) constructive trust; (4) conversion; (5) breach of contract; (6) unjust enrichment; and (7) theft by failure to make required disposition. Defendants filed a motion for summary judgment as to all of these claims. (DE 27.) Whitaker, by way of his response, filed a cross-motion for summary judgment. (DE 30.) Defendants, by way of their reply, filed a motion to strike Whitaker's cross-motion as an untimely dispositive motion. (DE 31.) The matter is now ripe for the Court's review.

## II. Summary Judgment Standard

Fed. R. Civ. P. 56(a) directs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party seeking summary judgment bears the initial burden

of informing the Court of the basis for its motion with particularity. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion must then make an affirmative showing of a genuine dispute in order to defeat the motion. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). To do so, the non-moving party must direct the Court's attention "to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).[2]

The Court will draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). If the Court determines that a rational fact finder could not find for the non-moving party based on the record as a whole, there is no genuine issue for trial, and the Court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Analysis

**A. Motion to Strike**

First, the Court will address Defendants' motion to strike Whitaker's cross-motion for summary judgment, which he combined with his Response to Defendants' motion for summary judgment. (DE 30.)

The Court set a dispositive motion deadline of July 21, 2021. (DE 26.) Whitaker filed his response to Defendants' motion and cross-motion for summary judgment on August 13, 2021, after the dispositive motion deadline. (DE 30.) He did not seek leave of the Court for

---

[2] The Court wishes to emphasize that Rule 56 expressly limits the Court to consideration of "materials in the record." Fed. R. Civ. P. 56(c)(1) & (c)(3); *see also Bormuth v. Cty. of Jackson*, 870 F.3d 494, 524 (6th Cir. 2017) (en banc) (Sutton, J., concurring). Whitaker's response (DE 30) contained numerous references to deposition transcript pages that were not in the record. In instances where Whitaker referenced materials not in the record, the Court did not consider those materials.

3

permission to file the late motion. In accordance with Sixth Circuit precedent, the Court considers the late motion a request to modify the scheduling order. *Andretti v. Borla Performance Industries, Inc.*, 426 F.3d 824, 830 (6th Cir. 2005).

Fed. R. Civ. P 16(b) requires a showing of good cause and leave of the Court to modify a scheduling order. *Id.* "The primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements." *Id.* (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)) (internal quotation marks omitted). The Court also considers possible prejudice to the party opposing the modification. *Id.*

Whitaker does not provide an explanation for his failure to meet the dispositive motion deadline. Defendants do not explain how they are prejudiced by the late filing. Considering the totality of the circumstances, the Court will allow Whitaker's cross-motion for summary judgment because it does not prejudice the Defendants. Accordingly, Defendants' motion to strike (DE 31) is denied.

**B. Violation of the Fair Labor Standards Act and Kentucky Wage and Hour Act**

Whitaker's complaint alleges that Defendants "willfully misclassified Plaintiffs as independent contractors and failed to pay regular and overtime wages in violation of [the FLSA and Kentucky's Wage and Hour Act]" and, as a result, "are liable to Plaintiffs for regular and overtime wages owed, an equal sum in liquidated damages, and attorneys' fees and costs incurred by Plaintiffs in bringing this action." (DE 16 at 8.) Defendants argue that the issue of Whitaker's classification is moot because, as to the overtime wages, Whitaker's work for Crown would be exempt from the FLSA's overtime requirements as a result of his work as an interstate driver for a motor carrier and that Kentucky state law incorporates this exemption. (DE 27-1 at 11–12.) As to the regular wages, Defendants argue that pay for all of his work-related tasks was encompassed in his commission arrangement and that he

4

agreed to the arrangement. (*Id.* at 15.) Whitaker maintains the position alleged in his Complaint. (DE 30 at 9–16.) To determine whether the question of Whitaker's employment classification is indeed moot, the Court will first address whether Whitaker, if classified as an employee, would be entitled to payment for any overtime or regular wages owed.

### 1. Payment of Overtime Wages

Defendants first maintain that Whitaker's work would be exempt from the FLSA's overtime requirements because of the "Motor Carrier Act" ("MCA") exemption. Whitaker does not address this argument at all, let alone make an affirmative showing of a genuine dispute as to any of the underlying facts. Nevertheless, the Court will analyze Defendants' argument.

The FLSA requires covered employers to pay overtime wages to employees who work more than 40 hours per week unless they fall under certain enumerated exceptions. *See* 29 U.S.C. § 207. One of these exceptions—the "MCA exemption"—holds that the FLSA's overtime provisions do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1); *see also* 29 C.F.R. § 782.1(a) ("[A]n employee with respect to whom the Secretary of Transportation has such power is excluded, automatically, from the benefits of [the maximum hours and overtime requirements] of the Fair Labor Standards Act."). The Secretary of Transportation's power covers drivers that work for a motor carrier or motor private carrier that transports property in interstate commerce. *Sec'y of Labor v. Timberline South, LLC*, 925 F.3d 838, 850 (6th Cir. 2019); 29 C.F.R. § 782.2(a)–(b); *see* 49 U.S.C. §§ 31502(b), 13102(14)–(15). The MCA exemption applies as long as the employee is covered by the Secretary of Transportation's regulatory power, regardless of whether or not the Secretary actually exercises the power. *Finn v. Dean Transp., Inc.*, 53 F. Supp. 3d 1043, 1051 (M.D. Tenn. 2014) (citing *Baird v. Wagoner Transp. Co.*, 425 F.2d 406, 410 (6th Cir. 1970)). The dispositive inquiry is whether Whitaker transported vehicles across state lines as part

of his work, *Timberline South, LLC*, 925 F.3d at 850, which he admits that he did regularly. (DE 27-4.) Further, Whitaker only drove vehicles greater than 10,000 pounds, so he would not be able to claim to have fallen within the "Small-Vehicle Exception" to this rule found in Section 306 of the SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-224, 112 Stat. 1572 (2008). (*Id.*)

Whitaker's work for Crown as a transport driver that regularly crossed state lines in interstate commerce means he would fall within the MCA exemption and the FLSA's overtime rules would not apply. Kentucky state law incorporates this exemption. *See* KRS 337.285(2)(c) ("This provision shall not apply to . . . [e]mployees as defined and exempted from the overtime provision of the Fair Labor Standards Act in Sections 213(b)(1), 213(b)(6), 213(b)(10), and 213(b)(17) of Title 29, U.S.C."); 803 KAR 1:075 § 4(1) ("Exemptions from Overtime . . . any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1953[.]"). Whitaker does not point to any portions of the record which would indicate a genuine issue of material fact on this point.

Based on the foregoing, the Court finds that Whitaker—if classified as an employee—would not be covered by the overtime provisions of the FLSA and Kentucky's Wage and Hour Act.

### 2. Payment of Regular Wages

Next, Defendants argue that pay for all of Whitaker's work-related tasks was encompassed in the commission arrangement to which he agreed. Whitaker argues that he should have been paid for all of his pre- and post-trip activities. Because Whitaker is not pursuing a minimum wage claim (DE 27-2 at 31) and he cannot pursue an overtime claim because of MCA exemption outlined above, Whitaker's claim for uncompensated hours worked seems to be a claim for what courts have referred to as "gap time" pay.

A "gap time" claim is one for uncompensated hours worked that fall between the minimum wage and the overtime provisions of the FLSA. *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999); *David v. Abington Mem. Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014). There are two types of gap time claims: pure gap time claims—when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours—and overtime gap time claims—when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular wage rate. *Athan v. United States Steel*, 364 F. Supp. 3d 748, 754 (E.D. Mich. 2019). Courts outside the Sixth Circuit have ruled on whether the FLSA permits each of these kinds of claims in various ways. *See, e.g., Monahan v. Cty. of Chesterfield, Va.*, 95 F.3d 1263, 1284 (4th Cir. 1996) ("For there to be an overtime gap time cause of action under the FLSA, a violation of section 206 or 207 of the Act must first exist. . . . Absent a minimum wage/maximum hour violation, we find no remedy under the FLSA for pure gap time claims."); *see also Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 116 (2d Cir. 2013) ("FLSA does not provide for a gap-time claim even when an employee has worked overtime."). While the Sixth Circuit Court of Appeals has not addressed the issue, the prevailing trend among district courts within the Sixth Circuit has been to adopt the Second Circuit's approach in *Lundy*, finding that the FLSA does not provide redress for gap time claims. *Athan*, 364 F. Supp. 3d at 755 (collecting cases).

Kentucky courts have not addressed the issue of "gap time" claims under Kentucky's Wage and Hour Act, so the Court will follow the guidance of the Kentucky Supreme Court and assume that they would adopt the same analysis adopted by federal courts as to the FLSA outlined above. *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n ex rel. Kaelin*, 212 S.W.3d 89, 95 (Ky. 2006) ("In the absence of any Kentucky cases on point, we

7

next look to federal cases interpreting the FLSA. . . . [T]he substantive provisions of the FLSA . . . are substantially similar to those in KRS Chapter 337 and the relevant administrative regulations. Accordingly, we look to the federal cases for guidance . . . .").

Given that Whitaker is not pursuing a claim under section 206 of the FLSA (DE 27-2 at 31) and is unable to pursue a claim under section 207 of the FLSA, *supra* Section III.B.1, the Court finds it appropriate to follow the prevailing trend within the Sixth Circuit and to apply the same reasoning to Whitaker's state law claim. Accordingly, the Court finds that Whitaker—if classified as an employee—would not be able to pursue a gap-time claim under the FLSA or Kentucky's Wage and Hour Act.

Because Whitaker could not pursue a claim for any unpaid regular or overtime wages under the FLSA or Kentucky's Wage and Hour Act, his classification as an employee or as an independent contractor is irrelevant as to his claims here. Thus, the Court declines to address the issue of Whitaker's classification. The Court grants summary judgment in favor of Defendants as to the issue of whether Whitaker can recover from Defendants for violations of the FLSA or Kentucky's Wage and Hour Act—he cannot.

## C. Accounting

Defendants next seek summary judgment on Whitaker's claim for "an accounting of all monies paid to Crown, Powers and/or Yost for services rendered by Plaintiffs." (DE 16 at 9.) Whitaker does not address this issue in his response/cross-motion.

An accounting is an "extraordinary remedy," *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972), and "[i]n light of the broad discovery available to litigants, accounting actions are of dubious utility." *Digital 2000, Inc. v. Bear Communications, Inc.*, 130 Fed. App'x 12, 23 (6th Cir. 2005). To succeed on a claim for an accounting, the plaintiff has the burden of proving that legal remedies are inadequate because the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them. *EQT Prod. Co. v. Magnum*

8

*Hunter Prod. Co.*, 266 F. Supp. 3d 961, 977 (E.D. Ky. 2017). Whitaker provides no such explanation. If Whitaker felt dissatisfied with Defendants' discovery responses, he should have filed a motion to compel during discovery. *Digital 2000, Inc.*, 130 Fed. App'x at 23. As Defendants point out, he did not. Whitaker does not raise any genuine dispute of fact on this point.

Accordingly, the Court grants summary judgment in favor of Defendants as to Whitaker's "accounting" claim.

**D. Constructive Trust**

Defendants also seek summary judgment as to Whitaker's constructive trust claim, and Whitaker again fails to address the issue. Whitaker's complaint alleges that Defendants' "failure to accurately and timely pay Plaintiffs from the monies entrusted to Crown, Powers and/or Yost for distribution amount to a breach of the constructive trust and fiduciary duty." (DE 16 at 9.) This claim presumably relates to the issue of overtime and regular wages that the Court has already addressed, *supra* Section III.B, and Whitaker's desire for additional payment.

In Kentucky, constructive trust claims are for property that "has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Madison Capital Co., LLC v. S & S Salvage, LLC*, 765 F. Supp. 2d 923, 935 (W.D. Ky. 2011) (quoting *Terrill v. Estate of Terrill*, 217 S.W.3d 858, 861 (Ky. Ct. App. 2006)) (internal quotation marks omitted). A constructive trust may also be imposed where title is taken under circumstances of circumvention or imposition. *Id.* (quoting *Keeney v. Keeney*, 223 S.W.3d 843, 849 (Ky. Ct. App. 2007)). Apart from Whitaker's failed FLSA and Kentucky Wage and Hour Act claims, Whitaker has not alleged any property fraudulently or unfairly obtained by Defendants and has not responded to Defendants' motion for summary judgment on this point.

9

Accordingly, the Court grants summary judgment in favor of Defendants as to Whitaker's "constructive trust" claim.

**E. Conversion**

Defendants further move for summary judgment as to Whitaker's conversion claim, and Whitaker again fails to address the issue. Whitaker's complaint alleges that "Plaintiffs had the right to a portion of the monies paid to Crown, Powers and/or Yost and as a result of the services provided by Plaintiffs." (DE 16 at 10.)

> To succeed on a conversion claim under Kentucky law, the plaintiff must prove that:
>
> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Madison Cap. Co., LLC v. S & S Salvage, LLC*, 507 Fed. App'x 528, 532–33 (6th Cir. 2012) (quoting *Meade v. Richardson Fuel, Inc.*, 166 S.W.3d 55, 58 (Ky. Ct. App. 2005)). Whitaker has shown none of these elements and has not made any showing of a genuine dispute in response to Defendants' motion arguing the same.

Accordingly, the Court grants summary judgment in favor of Defendants as to Whitaker's "conversion" claim.

**F. Breach of Contract**

Additionally, Defendants seek summary judgment as to Whitaker's breach of contract claim, and Whitaker again fails to respond. According to Whitaker's complaint: "Over the course of each Plaintiffs' employment, Crown, Powers and/or Yost has breached the Agreement by failing to pay Plaintiffs the proper amount pursuant to the terms of the Agreement." (DE 16 at 11.)

10

In Kentucky, a breach of contract claim requires proof of three elements: (1) the existence of a contract; (2) a breach of that contract; and (3) damages flowing from the breach of contract. *Henderson v. Skyview Satellite Networks, Inc.*, 474 F. Supp. 3d 893, 903–04 (W.D. Ky. 2020) (citing *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009)). Whitaker does not identify any of these elements. Per their respective testimony, Whitaker and Defendants appear to have had an agreement that Whitaker would be paid a commission of 30 percent of what Crown received for each transportation run. (DE 27-2 at 9; 27-7 at 4.) As Defendants point out, this agreement was not breached. Whitaker, by failing to respond to this issue, does not point to any portion of the record that would indicate a genuine dispute of fact, and the Court cannot identify one.

Accordingly, the Court grants summary judgment in favor of Defendants as to Whitaker's "breach of contract" claim.

### G. Unjust Enrichment

Whitaker further fails to address Defendants' motion for summary judgment on the issue of unjust enrichment. Whitaker's complaint alleges that Defendants "collected payments related to services provided by Plaintiffs without paying for the reasonable value of said services." (DE 16 at 11.)

Under Kentucky law, the "doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Shane v. Bunzl Dist. USA, Inc.*, 200 Fed. App'x 397, 404 (6th Cir. 2006) (quoting *Codell Constr. Co. v. Kentucky*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977)). In cases where there was no explicit contract, an unjust enrichment claim requires: (1) a benefit conferred upon the defendant at the plaintiff's expense; (2) a resulting appreciation of the benefit by the defendant; and (3) an inequitable retention of the benefit without payment for its value. *Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016) (citing *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky.

11

Ct. App. 2009)). In any event, Whitaker has not pled the elements of an unjust enrichment claim and has not articulated any genuine dispute of fact as to Defendants' contention that it should fail. The Court agrees with Defendants.

Accordingly, the Court grants summary judgment in favor of Defendants as to Whitaker's "unjust enrichment" claim.

### H. Theft By Failure to Make Required Disposition

Finally, Defendants move for summary judgment as to Whitaker's claim for theft by failure to make required disposition, and Whitaker again fails to address the issue. Whitaker's Complaint alleges that Defendants "failed to remit payments to Plaintiffs when they were due and owing, and instead has dealt with these monies as its own." (DE 16 at 12.)

A person is guilty of theft by failure to make required disposition when: "(a) He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and (b) He intentionally deals with the property as his own and fails to make the required payment or disposition." KRS 514.070(1). Just as above, *supra* Sections III.D–G, Whitaker fails to identify what property or money of his Defendants wrongfully possessed. Defendants cannot identify any and neither can the Court. Again, by failing to respond, Whitaker does not point to any genuine issue of fact on this point.

Thus, the Court grants summary judgment in favor of Defendants as to Whitaker's "theft by failure to make required disposition" claim.

### IV. Conclusion

Accordingly, for the reasons set forth herein, **IT IS HEREBY ORDERED:**

(1) Defendants' Motion for Summary Judgment (DE 27) is **GRANTED**;

(2) Plaintiff's Cross-Motion for Summary Judgment (DE 30) is **DENIED**;

(3) Defendants' Motion to Strike (DE 31) is **DENIED**;

(4) All pending deadlines and hearings are **CANCELLED**;

(5) The Clerk of the Court shall **STRIKE** this case from the Court's active docket; and

(6) A separate Judgment will issue.

This 31st day of January, 2022

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY